5    621
30   344

### JOHN WINN v. THE STATE.

1. INDICTMENT. — PRINTED FORMS for indictments may be used, the blanks being properly filled, without infringing the statutory requirement that an indictment shall be the "*written* statement of a grand jury," etc.   And a business card of the printers of such forms, put at the head of the blanks, however conspicuously displayed, or unseemly, is no part of the indictment, nor an infraction of the requirement that indictments must commence, "In and by the authority of the State of Texas."

2. SAME — Nor does an unneccessary written caption constitute part of an indictment, or impair its validity.

3. ASSAULT WITH INTENT TO MURDER. — In trials for this offence the jury need not be instructed on the law of minor assaults, nor on self-defence, unless the evidence requires such instructions as part of the "law applicable to the case."

APPEAL from the District Court of Bastrop.   Tried below before the Hon. L. W. MOORE.

The opinion clearly states all material facts.

*Fowler & Maynard*, for the appellant.    The court should have given to the jury the statutory definition of a simple assault, and simple assault and battery, as a part of the definition of an assault with intent to murder.    Pasc. Dig., arts. 2137, 2138, 2155.

We do not insist that the definition of a simple assault should have been given for the reason that there is evidence in the case tending to show that the offence committed was only simple assault, and so as to allow the jury an opportunity to find the defendant guilty of a simple assault only, but because, under our statutes, the definition of a simple assault is necessarily a part of the definition of an assault with intent to murder, and that, therefore, it is impossible to define the assault with intent to murder without embracing in such definition the statutory definition of a simple assault.

An assault with intent to murder is composed of one offence actually committed, viz., a simple assault, coupled with an intent to commit another offence, viz., murder.    Now, the court very properly defined the offence intended to be committed, but failed to define the one actually committed; and we submit that there are just as good reasons for defining the offence actually committed, within the meaning of the definition of an assault with intent to murder, as there are for the one only intended.

We further submit that, so far as our observation extends, this case in this respect is an isolated one, and that the learned judge before whom it was tried departed from his usual practice in giving charges in cases of this kind.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, J.    It appears that the indictment in this case was drawn by filling up, in writing, the blanks in a printed

form.   Above the writing was printed the words, " Van
Beek, Barnard & Tinsley, printers, stationers, litho-
graphers, and blank-book makers, St. Louis ; Class 2."
Then followed, in writing, the caption, in these words, viz. :
" The State of Texas, ⎱ In the District Court of said coun-
" County of Bastrop. ⎰    ty, Spring Term, A. D. 1878."

Motion to quash was made because the indictment did
not commence, " In the name and by the authority of the
State of Texas;" as is required by the statute (Pasc. Dig.,
art. 2863), and also by section 12, article 5, of the Consti-
tution, which provides that " all prosecutions shall be
carried on in the name and by the authority of the State of
Texas, and conclude, ' against the peace and dignity of the
State.' "   This motion was overruled by the court, and, as
we think, properly.

Though the statute defines an indictment to be " the
*written* statement of a grand jury, accusing a person therein
named of some act or omission which by law is declared to
be an offence " (Pasc. Dig., art. 2862), it has never been
held that a printed form, with its blanks properly filled in
writing, was not a sufficient compliance with the law.   We
do think, however, that as a matter of taste and propriety,
in having forms printed for his sole convenience, the prose-
cuting officer might stipulate with his printers that the
blanks to be printed should not be used by them as an
advertising medium ; or, if so, that their names should not be
placed in so conspicuous a portion of the form, and in such
connection with it as that their advertisement will be mis-
taken, as seems to have been done by defendant and his
counsel in this case, for part and parcel of an indictment
charging him with an assult with intent to murder.   The
process and pleadings necessary in criminal prosecutions for
violations of the law are not, it seems to us, the proper
mediums for advertising private individual enterprises.   Suf-
fice it to say, however, that this advertisement is not part of

the indictment, and does not invalidate it. Nor is the indictment invalidated by the use of the unnecessary cáption in writing. The caption is no part of the indictment; it is not essential under our law. *English* v. *The State*, 4 Texas, 125; 1 Whart. Cr. Law, 6th ed., sec. 219; 1 Bishop's Cr. Proc., 2d ed., sec. 661.

The only other errors complained of relate to the charge of the court. When considered with reference to the facts proven, the charge, which simply presented the law of assault with intent to murder, and self-defence, was amply sufficient. There were no facts demanding a charge on the lesser degrees of assault. On Friday, the day before the *rencontre*, defendant had threatened to kill Gradenton. Again, on Saturday, he renewed the threat, saying he intended to kill him before sundown. Just before the shooting, he is seen by one of his own witnesses approaching the house of Williams with his six-shooter in his hand, and when he reaches Williams's house, with the most abusive and insulting language he called upon Gradenton to come out; and when the latter comes out of the house, he immediately opens fire upon him. It is true, Gradenton returned his fire, and wounded him. This, however, does not in any manner change the nature or degree of his offence. Under the circumstances, had death resulted from his assault, the crime would have been murder in the first degree, — that is, murder containing all the elements of express malice. In a trial for assault with intent to murder, the court should not instruct on aggravated or simple assault unless the evidence calls for such instruction. *Sims* v. *The State*, 4 Texas Ct. App. 144; *Hines* v. *The State*, 3 Texas Ct. App. 484; *Crane* v. *The State*, 41 Texas, 494; *Pugh* v. *The State*, 2 Texas Ct. App. 539.

As was said by this court in Pugh's case: "When one charged with committing an assault with intent to murder is shown to have given the first insult, and to have begun, him-

self, the attack which finally resulted in the effort on his part to kill, he cannot mitigate the offence by showing that he attempted to kill under the immediate influence of sudden passion, caused by injuries received from his adversary during the *rencontre*. In this case, as was said in *Crane* v. *The State*, 41 Texas, 494, the insult, the passion, and the assault were all on the side of the defendant." Independent of his threats, and his deliberate mind and formed design, as evinced by his actions, the offence of defendant could not have been manslaughter, under the evidence, had death ensued ; for the law is that, " though a homicide may take place under circumstances showing no deliberation, yet if the person guilty thereof provoked a contest, with the apparent intention of killing or doing serious bodily injury to the deceased, the offence does not come within the definition of manslaughter." Pasc. Dig., art. 2260. So far as the law of self-defence is concerned, there was nothing in the evidence requiring such a charge.

The guilt of the defendant was clearly, plainly, and indubitably established, and we think he has every reason to congratulate himself that the jury affixed his punishment at the lowest penalty (two years) attached to his crime.

There being no error, the judgment is affirmed.

*Affirmed.*